Plaintiff sued Berger Foods Company, a commercial partnership, and Ben Berger and Archie Berger, its members, in solido, for $850. Plaintiff alleged that about March 15, 1946, he was employed by Berger Foods Company as manager of its pickle storage plant in Tangipahoa Parish for a period of one year, said employment to terminate March 15, 1947. He was to receive $100 per month or a total of $1200. He alleged that he carried out satisfactorily all his duties but was discharged without cause on or about July 1, 1946; that he had been said only $350 and the balance of $850 remained due him. Jurisdiction over property allegedly owned by the non-resident defendants was obtained by a writ of attachment, and service was made through a curator ad hoc.
Defendants all appeared generally by way of answer.
They admit the employment of plaintiff but deny that it was for a period of one year. They affirmatively allege that it was "for no specific period of time." Defendants do not in their answer set out affirmatively how much and when plaintiff was to be paid, — whether monthly or semi-monthly and on what salary basis, — but allege only that the employment was "for no specific period of time", and that the "future employment depended upon how the deal worked out and if his (plaintiff's) services proved satisfactory." Defendants further allege that their business venture in Tangipahoa Parish proved a failure, and that on June 28, 1946, one of their representatives terminated plaintiff's employment, and that at that time defendants gave plaintiff a check for $100 "as a bonus or present, which was satisfactory to the said plaintiff and he so stated".
The District Judge awarded plaintiff judgment as prayed for, for $850 with interest and costs, maintaining plaintiff's writ of attachment. Defendants appealed suspensively to this Court. *Page 629 
The mentioned check was offered in evidence. The check does not contain any writing of any kind on it to identify it in any way whatsoever. It is simply a check payable to the order of Howard C. Williams for $100, signed by Berger Foods Company by A.F. Berger, dated June 28, 1946, and on the left hand margin are written the words "special acct". The check does not indicate whether it is for salary, whether it is a bonus, or a present, or just what it represented. Nothing whatever is written or printed on the check to indicate that is was given or accepted in settlement of any disputed claim.
The primary factual question presented is whether plaintiff was employed for a period of one year, or whether he was employed by the month at $100 per month. The primary legal question presented is what effect, if any, the giving and acceptance of the so-called "bonus check", and the retention of the proceeds thereof by plaintiff, had on the rights of the parties.
[1] The District Judge saw and heard all the witnesses, and his opinion is entitled to great weight unless manifest error appears in the record. In our opinion no such error appears.
[2] The only persons present when plaintiff was employed were plaintiff and Fred Berger, first cousin of the partners of Berger Foods Company, and their duly accredited representative. Plaintiff testified that the first communication he received was from one of the Berger brothers in a telephone call from Hammond; plaintiff was told that a man would be around to see him in a week or two. Later Fred Berger telephoned plaintiff from a hotel in Kentwood and asked him to meet for a discussion, which plaintiff did. Fred Berger outlined the venture defendants were planning, and plaintiff told him at once that, he, plaintiff was not familiar with that line of work. Nevertheless Fred Berger told plaintiff that they would like to have him take the job. Plaintiff was to communicate with various farmers and try to get them to sign contracts agreeing to sell their cucumber pickles to defendants; plaintiff was also to assist in building vats and in supervising the salting of pickles, and testing them, and doing other work related to this new venture. None of this is disputed by Fred Berger, the only witness tendered by defendant. In fact, Fred Berger testified that plaintiff had been recommended as a man of good habits and a conscientious worker, and counsel for defendants in response to a question by the trial judge stated that there was no charge in the record that plaintiff was at fault, or anything of that kind.
The position of defendants seems to be that plaintiff was employed for an indefinite period of time; that since the farmers who contracted to sell cucumber pickles to defendants did not carry out their contracts, and since the venture failed, defendants had a right to discharge plaintiff. In this connection we quote what we believe is the following significant testimony from Fred Berger:
"Q. At the time you employed Mr. Howard Williams, did he make any representations to you as to the amount of business he could secure? A. Only that he said he had a large number of the farmers that he knew real well. He had been living there a long time and if acreage could be gotten, he would get it, and as long as the Company lived up to their contract and prices and did what they promised to do, he felt sure he could get the cucumbers.
"Q. Was that the prime motive of your employing him? A.No, the prime motive was he was recommended as a man of goodhabits and a conscientious worker." (Emphasis ours).
Plaintiff went right to work as soon as he was employed. He secured contracts for the sale of cucumber pickles from 84 farmers; carbon copies of 84 of those contracts were offered in evidence. The testimony shows that the farmers who signed contracts to sell pickles to defendants did not live up to those contracts, and there is a rather strong suggestion in the evidence that the reason they did not do that was because they were not satisfied with the manner in which their pickles were graded by defendants. In other words, the farmers would get more money for their cucumber pickles elsewhere, and they took them elsewhere. *Page 630 
There is no suggestion that plaintiff was in any way responsible for this. There is no showing that defendants ever took any legal action whatever to try to compel these 84 farmers to live up to their signed contracts. In fact, there is some doubt as to whether or not the contracts could be enforced legally.
Plaintiff himself testified positively that he was hired for one year at $1200, payable $50 semi-monthly. He explained that it would not have been worth his while to discontinue his other work and begin this new venture, if he was going to have a job for only a short period of time. Other witnesses, whose credibility evidently was accepted by the trial judge, corroborated plaintiff to the extent that they testified that Fred Berger had brought plaintiff to them and introduced him to them as the company representative, and told them that plaintiff had been hired for twelve (12) months, and if anything come up which required discussion, plaintiff would be there available to talk over any problems they might have.
Plaintiff's testimony seems plausible and reasonable, and since it is corroborated by that of other witnesses whose credibility was not attacked or impeached, we believe it clearly prevails over the rather vague testimony of defendants' one witness Fred Berger. It not reasonable to believe that a responsible man and a good worker, such as plaintiff, would have entered into an agreement such as defendants set out in their answer, that is, "for no specific period of time", contingent upon "how the deal worked out and if his services proved satisfactory". Certainly defendants cannot complain that plaintiff's services did not prove satisfactory for they have not suggested that to be the case in their pleadings or testimony.
The fact that defendants felt called upon to give plaintiff the "bonus check" certainly implies that defendants did not feel they had the right to discharge plaintiff at any time. If they had that right, plaintiff was due nothing further. And according to the theory of defendants, the arrangement from the very beginning was that if the venture was not successful plaintiff would be discharged. If that were true, there was no reason whatever for defendants to feel that they should give plaintiff any present or bonus. Respecting this bonus, Fred Berger said this: " * * * the Company so (saw) fit to terminate his employment; that he would get an additional check from the office, and I took it upon myself to give him $100.00 bonus because I knew he had worked hard the past three months. He tried to do what he could, and I felt he should have that, and he didn't want to take it and I insisted that he do so."
Plaintiff said: "* * * He told me it was my last check", whereupon plaintiff complained, and said further, "I wasn't hired that way."
Plaintiff denied telling Mr. Fred Berger he was satisfied with that bonus check and insisted that he told Mr. Berger he had been hired by the year and had done everything he could and didn't think he had been treated right.
We therefore believe that the evidence clearly preponderates in plaintiff's favor on the question of fact.
[3-5] There is no plea of estoppel, and no plea of accord and satisfaction, in defendants' answer. However, in brief, defendants urge that the acceptance of the $100 check by plaintiff estops plaintiff from claiming anything further. Defendants argue that if plaintiff did not consider this a final payment of his wages, then he should have refused to accept it. Pretermitting the question of whether or not defendants can rely upon either estoppel or accord and satisfaction since neither was pleaded, we believe the proof falls far short of showing that plaintiff accepted this $100 payment as a final payment of his wages". Fred Berger does not suggest that it was given to plaintiff in settlement of any disputed claim, but that it was bonus or present. In fact, under the view taken by defendants, there was no dispute at that time for defendants had the absolute right to discharge plaintiff at any time. Since therewas no proof of a tender and acceptance of a fixed sum in settlement of a disputed claim, there could have been no accord and satisfaction. And since there is no showing that there were any representations *Page 631 
made by plaintiff, either affirmatively or by failure to disclose, we do not see how an estoppel would lie. As above pointed out, there is nothing whatever on the check itself to indicate that it was given or accepted in final settlement of any claim, disputed or otherwise. As shown by the above testimony quoted from Fred Berger, he took it upon himself to give plaintiff this $100.00 bonus."
For the reasons assigned, the judgment appealed from is hereby affirmed, at the cost of defendants.
ELLIS, J., recused.